UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RONALD TEEL; LEONE TEEL; and ) <br> JOHN THOMAS LAYTON ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> RILEY DARNELL, in his official capacity ) <br> as Secretary of State of the State of Tennessee ) <br> and in his individual capacity; BROOK ) <br> THOMPSON, in his official capacity as ) <br> Coordinator of Elections of the Department of ) <br> State of the State of Tennessee and in his ) <br> individual capacity; the BRADLEY COUNTY ) <br> ELECTIONS COMMISSION; FRAN GREEN, ) <br> in her official capacity as Administrator of the ) <br> Bradley County Elections Commission and in ) <br> her individual capacity; and KALIN MORRIS, ) <br> in her official capacity as the Assistant ) <br> Administrator of Elections of the Bradley ) <br> County Elections Commission and in her ) <br> individual capacity. ) <br> ) <br> Defendants. ) | No. 1:07-CV-271 <br><br> Chief Judge Curtis L. Collier |

# **MEMORANDUM**

In this case the Court is required to consider the constitutionality of certain conditions or qualifications Tennessee places on those desiring to vote in Tennessee. Although the Court agrees that the right to vote is among the most cherished rights of the American people, the Court does not see any constitutional defect with regard to the qualifications challenged in this lawsuit. Accordingly, the Court will **GRANT** the Motion to Dismiss (Court File No. 19) filed by defendants Riley Darnell, the Secretary of State of Tennessee; Brook Thompson, the Coordinator of Elections for the Department of Secretary of State of Tennessee; the Bradley County Elections Commission

("BEC"); Fran Green, the Administrator of the BEC; and Kalin Morris, the Assistant Administrator of Elections of the BEC[1] ("Defendants").

I.  **RELEVANT FACTS**

According to their complaint, Plaintiffs Ronald Teel, Leone Teel, and John T. Layton ("Plaintiffs") are American citizens who do not own any interest in real property in any state and live full-time in their recreational vehicles. In 1999, Layton rented out his home in Maryland and "intended to, and did in fact, while physically present in Bradley County, Tennessee, establish[] Cleveland, Tennessee as his new residence and domicile." (Court File No. 1, ¶ 17).[2] The Teels, who are husband and wife, abandoned their New Mexico residence and "intended to establish, and did establish, Cleveland, Tennessee as their new residence and domicile, with the intent to return there when not traveling." (*Id.*, ¶ 14).

Tennessee is the only state Plaintiffs "have established residency or intend to establish residency in." (*Id.*, ¶ 18). Plaintiffs have the "definite intention" to return to Cleveland, Tennessee (*id.*). Because Plaintiffs lack any interest or ownership in real property, they use as their addresses commercial mailboxes in Cleveland, Tennessee. These mailboxes that Plaintiffs rent provide mail receipt and forwarding services, which Plaintiffs use to have their mail sent to various locations

---

[1]The individual defendants are sued in their official and individual capacities. However, the parties agreed to dismiss without prejudice the claims against Defendants in their individual capacities. Therefore, Plaintiffs' motion to dismiss the individual capacity claims will be **GRANTED** (Court File No. 25), and the individual claims will be **DISMISSED WITHOUT PREJUDICE**. Accordingly, the motion to dismiss filed by Green and Morris in their individual capacities will be **DENIED** as **MOOT** (Court File No. 23).

[2]Cleveland, Tennessee is located in Bradley County.

throughout the country. Plaintiffs have used these addresses when performing various functions, such as obtaining Tennessee driver's licenses, obtaining insurance, registering vehicles, paying taxes, and being counted by the United States Census.

Layton registered to vote in Bradley County, Tennessee, in 1999, and voted in at least two federal elections since then. The Teels registered to vote in person at the BEC in 2003, where they informed the staff "of the nature of their address, the fact that they live full-time in an RV, and their frequent travel." (*Id.*, ¶ 24). The Teels voted in the 2004 federal elections.

The BEC notified Plaintiffs on February 15, 2006 that their voter registration records were being purged because their use of a commercial property for voter registration violates Tenn. Code. Ann. § 2-2-122(a)(1) & (6). The BEC notification advised Plaintiffs they had 30 days to submit any questions about the purge to the BEC.

Shortly thereafter, Layton contacted the BEC to dispute his removal. The complaint does not state what, if anything, occurred as a result, other than that Layton was not able to vote.

On April 1, 2006, the Teels sent a letter objecting to the purge, and asking for assistance preserving their right to vote. The BEC responded to that letter on June 6, 2006, by telling the Teels they were not Tennessee residents because they receive mail through a commercial address and advising them to vote in the last jurisdiction where they lived.

On July 12, 2006, the Teels responded by informing BEC they were previously registered to vote in Bradley County, the purge was unauthorized by law, the amended code provisions were only intended to address the residency of candidates for public office, and the purge should be rescinded based on the same considerations allowing homeless people to vote. The BEC contacted

Defendant Thompson, who stated the amended code provisions were not limited to candidates, the Teels had never established residency, and their removal from the voter registration rolls was proper. Relying on Thompson's information, the BEC sent a letter to the Teels on October 3, 2006 informing them they did not qualify as residents under the law. The Teels contacted Defendant Darnell on October 27, 2006, asking him to overturn the BEC's decision and restore their voter registration status. Over six months later, he responded, denying their request.

Plaintiffs also contacted various government officials in an attempt to have their names restored to the voting rolls in Bradley County. They have not been able to vote in Tennessee in any election since February 15, 2006.

Plaintiffs apparently have not taken any steps to establish their residencies in Tennessee in accord with the guidance provided by Tennessee officials.

Plaintiffs filed their complaint on November 6, 2007. They seek damages from the BEC under 42 U.S.C. § 1983 and declaratory and injunctive relief against all defendants under 28 U.S.C. §§ 2201 & 2202. They seek a declaratory judgment invalidating Tenn. Code Ann. §§ 2-2-122(a)(1) and (6), as well as injunctive relief to prohibit those provisions from being enforced and to be reinstated as registered voters in Bradley County.

## II. STANDARD OF REVIEW

When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998), accept the complaint's factual allegations as true, *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994,

996 (6th Cir. 1994), and determine whether plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (May 21, 2007). In deciding a motion to dismiss, the question is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). At the same time, bare assertions of legal conclusions are insufficient, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Unsupported allegations and legal conclusions "masquerading as factual conclusions" are not sufficient. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

**III.    DISCUSSION**

Plaintiffs assert multiple claims under the Fourteenth Amendment to the United States Constitution[3] and under the Tennessee Constitution[4] alleging their right to vote has been infringed by Defendants and that Tenn. Code Ann. § 2-22-122(a)(1) and (6) is unconstitutional.

Tenn. Code Ann. § 2-22-122(a)(1) and (6) states:

The determination of whether a person is a resident or where the person resides or

---

[3]Specifically, their complaint alleges the following Fourteenth Amendment violations: (Count 1) substantive due process (rights to vote and travel), (Count 2) due process (irrebuttable or conclusive presumption Plaintiffs are not residents), (Count 3) procedural due process, (Count 4) equal protection, (Count 5) right to travel and privileges or immunities.

[4]Their complaint alleges Defendants violated the Tennessee Constitution's (Counts 1-3) Law of the Land Provision, Art I. § 8, (Count 4) the class legislation clause, Art. XI § 8, (Count 6) Art. I § 5, (Count 7) Art. IV § 1.

5

has residence for purposes of the election code shall be made in the light of the following principles:

> (1) The residence of a person is that place in which the person's habitation is fixed, and to which, whenever the person is absent, the person has a definite intention to return; provided, that a person may not register to vote using a business location as the registration address when the sole basis for the person's presence at such location is based on a business or commercial use;
>
> . . .
>
> (6) A person may be a resident of a place regardless of the nature of the person's habitation, whether house or apartment, mobile home or public institution, owned or rented; however, a commercial address may not be used for residential purposes, unless the applicant provides evidence of such applicant's residential use of such address;[5]

By prohibiting them from using a commercial address to vote, Plaintiffs contend they are being unconstitutionally denied the right to vote. Defendants contend the statute and their application of it merely restrict the right to vote in Tennessee to residents of Tennessee. The Court agrees with Defendants.

The "right to vote has long been recognized as central to the protection and exercise of the other rights guaranteed in our society." *Bell v. Marinko*, 367 F.3d 588, 591 (6th Cir. 2004) (quoting *Association of Community Organizations for Reform Now (ACORN) v. Miller*, 129 F.3d 833, 834 (6th Cir. 1997)). Other basic rights "are illusory if the right to vote is undermined." *ACORN*, 129 F.3d at 834 (citing *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964)).

The right to vote, however, like all other constitutional rights, is not unqualified. Since even before the adoption of the United States Constitution, states have had the responsibility for

---

[5]The second portions of each section, concerning business locations and commercial addresses, were added to the statute in 2005. 2005 Tenn. Pub. Acts, c. 163, §§ 1, 2, eff. July 1, 2005, *available at* 2005 Tenn. ALS 163 or TN LEGIS 163.

regulating elections, including those related to eligibility and registration requirements. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 568 (6th Cir. 2004). "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Burdick*, 504 U.S. at 433 (internal quotation marks and citation omitted); *see also Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (states may impose voter qualifications and regulate voting).[6]

### A. Level of Scrutiny

Plaintiffs request the Court apply strict scrutiny to the statute because voting is a fundamental right which can be taken from a citizen only if a regulation is narrowly tailored to serve a compelling state interest. They argue the statute cannot survive strict scrutiny. Defendants argue strict scrutiny is not applicable here, and the Court agrees.

Acknowledging that election laws invariably impose a burden on voters, the Supreme Court has rejected the idea that every voting regulation must be subject to strict scrutiny. *Clingman v. Beaver*, 544 U.S. 581, 593 (2005); *Burdick*, 504 U.S. 428, 433 (1992).[7] Instead, a "court considering

---

[6]Although states regulate who may vote in their elections, their regulations are limited by federal constitutional and statutory restrictions. *See* U.S. Const. Amend. VI (prohibiting denial of vote based on "race, color, or previous condition of servitude"); Amend. XIX ("on account of sex"); Amend. XXIV ("failure to pay any poll tax or other tax"); Amend. XXVI ("on account of age" for U.S. citizens eighteen or older); *Reynolds v. Sims*, 377 U.S. 533, 565-566 (1964) (requiring one person, one vote); 42 U.S.C. § 1973gg et seq. (National Voter Registration Act); 42 U.S.C. § 15301 et seq. (Help America Vote Act). Plaintiffs have not alleged a violation of any of these provisions.

[7]The Supreme Court warned against deeming ordinary burdens on voting severe because that "would subject virtually every electoral regulation to strict scrutiny, hamper the ability of States to

7

a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights . . . the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (internal quotation marks omitted); *accord Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006). The Supreme Court further explained that a state election law imposing "reasonable nondiscriminatory restrictions" on voter rights is generally justified by a state's important regulatory interests. *Burdick*, 504 U.S. at 434; *accord Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998). Strict scrutiny is only applicable when a state election law imposes "severe" restrictions on voter rights. *Burdick*, 504 U.S. at 434; *accord Citizens for Legislative Choice*, 144 F.3d at 921.

The United States Court of Appeals for the Sixth Circuit has explained that there are two factors for determining whether a regulation burdens voting rights severely or only incidentally: content-neutrality and alternate means of access:

> First, and most importantly, a law severely burdens voting rights if it discriminates based on content instead of neutral factors. It is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status. Second, a law severely burdens voting rights if the burdened voters have few alternate means of access to the ballot. In this situation, the law impermissibly restricts the availability of political opportunity.

*Citizens for Legislative Choice*, 144 F.3d at 921 (internal quotation marks and citations omitted).

---

run efficient and equitable elections, and compel federal courts to rewrite state electoral codes. The Constitution does not require that result, for it is beyond question that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Clingman*, 544 U.S. at 593 (internal quotation marks omitted).

The statute at issue here is not a severe restriction on voting rights. It is not targeted at people who live in recreational vehicles.[8] It is merely a requirement that voters live in Tennessee. There is no reason people who live in recreational vehicles could not live in Tennessee if that is their desire. But it they desire to live in Tennessee and enjoy the right to vote in Tennessee, they must also take up residence in Tennessee. And the statute does not prevent alternate access to the ballot because the statute does not prevent residents of Tennessee from voting. By requiring voters to be residents of Tennessee, the statute burdens voting rights only incidentally, inhibiting only the rights of people who do not have a right to vote in Tennessee because of their lack of residence. The Supreme Court has specified that residence as a requirement for voting does not warrant strict scrutiny. *Hill v. Stone*, 421 U.S. 289, 297 (1975). The Supreme Court has also recognized that states may require that voters be bona fide residents. *Carrington v. Rash*, 380 U.S. 89, 93-94 (1965); *Pope v. Williams*, 193 U.S. 621 (1904). Thus, rational basis applies to the statute.

### B.    Legitimate Residency Restrictions

*Carrington* is instructive as to Plaintiffs' contention they have been denied the right to vote because they lack residential addresses. In *Carrington*, the Supreme Court found unconstitutional a Texas restriction on voting by members of the armed services. One of Texas's arguments in favor of the restriction was that members of the armed forces are transient in nature. 380 U.S. at 94. The Supreme Court rejected this argument, holding Texas cannot prevent all service members from voting. *Id.* at 96-97. However, the Court noted repeatedly that Texas may ensure service members are bona fide residents before allowing them to vote. *Id.* at 94, 95, 96.

---

[8]Part of Plaintiffs' argument is that the legislature had no intention of affecting people who live in recreational vehicles.

*Carrington* is cited in *Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004), which Plaintiffs rely on for the proposition that the statute here creates an unconstitutional irrebuttable presumption that Plaintiffs are not residents. Plaintiffs' contention would be true if the statute prohibited residents of motor homes from voting. But this statute prohibits a person from registering to vote using a commercial address only when the "sole basis for the person's presence at such location is based on a business or commercial use." Tenn. Code Ann. § 2-22-122(a)(1). The statute allows for commercial addresses if the voter applicant "provides evidence of such applicant's residential use of such address." § 2-22-122(a)(6). These are not irrebuttable presumptions prohibiting commercial addresses. They are merely requirements that people live at the address they are using to vote. If that address is a commercial address, the voters must show they live there, but there is no irrebutable presumption that commercial addresses are not residences. Merely requiring that voters be bona fide residents is not unconstitutional, as the Supreme Court noted repeatedly in *Carrington*, and the Sixth Circuit reiterated in *Bell*, 367 F.3d at 592 (A state "is free to take reasonable steps . . . to see that all applicants for registration to vote actually fulfill the requirement of bona fide residence.").

The Sixth Circuit has looked to state law to determine the definition of residence for voting purposes. *See Bell*, 367 F.3d at 592. To establish domicile for voting purposes, a person must live in a particular place and have an intent to make that place home. *Brown v. Hows*, 42 S.W.2d 210, 211-12 (Tenn. 1931); *see also Martinez v. Bynum*, 461 U.S. 321, 330 (1983); *Gilbert v. David*, 235 U.S. 561, 569 (1915). In *Brown,* the Tennessee Supreme Court held a voter was not domiciled in a county merely because his farm was there, which suggests a longstanding recognition that a commercial location is not automatically a person's residence for voting purposes.

Turning to the facts of this case, Plaintiffs assert they established their domiciles in Bradley

County. But such contentions are unsupported legal conclusions. Plaintiffs never state they *live* in Bradley County or, more importantly, that they informed the BEC they *live* in Bradley County. They do not provide any facts showing they live in Bradley County, nor do they allege they provided any indication to the BEC that they live in Bradley County. Although Plaintiffs plan to establish residency in Bradley County when they stop traveling, residency for election purposes requires physically living in the area, not just an intent to reside there at some indefinite time in the future.

Plaintiffs use mailboxes in Bradley County, and from these addresses they perform necessary functions such as registering their vehicles and paying taxes. But Plaintiffs do not live at the location of the mailboxes. They often use the commercial mail service to forward their mail to other locations around the country. Because they are constantly traveling, they do not apparently live anywhere. Not living in Tennessee, they remain residents of their previous states, even though they contend they abandoned those residences. If they do reside in Bradley County, even if not in traditional homes, they can use the locations they reside as their addresses, in accordance with the National Voter Registration Act, which instructs states to accept voter registrations from people who indicate where they live, even if they lack a permanent residence. 11 C.F.R. § 8.4. Plaintiffs have not done this, instead offering to indicate the physical location of the commercial mailboxes they rent. It does not matter where the mailboxes are. What matters is whether Plaintiffs live in Bradley County. Having failed to indicate to the BEC that they live in Bradley County, Plaintiffs have no right to vote there.

Although not dispositive to this case, the Sixth Circuit addressed a similar fact pattern in a case arising out of this district. In *Pepper v. Darnell*, 24 F. App'x 460 (6th Cir. 2001), the plaintiff lived in a functioning automobile and received his mail at a rented mailbox. County election

11

officials refused the plaintiff's attempts to register to vote by mail, instead requiring him to provide them with a specific physical location or address where he lived. The plaintiff refused, contending the registration of his automobile in the county should suffice as proof of residency under the National Voter Registration Act ("NRVA").

The panel in *Pepper* explained, "The crux of this litigation is the legality of Tennessee's requirement that one registering to vote provide a specific physical location as an address, regardless of the transient lifestyle of the potential voter." *Id.* at 462. The Court concluded Tennessee's requirement did not violate the NVRA. *Id.* No constitutional issues were raised in *Pepper*, but the resolution of those claims in this case is the same.

The Court will now discuss Plaintiffs' remaining constitutional claims.

### C.     Equal Protection Clause

Plaintiffs argue Defendants are applying the statute in a manner violating the Equal Protection Clause of the Fourteenth Amendment by treating owners of recreational vehicles different than people who have a traditional residential address and people who fit the traditional definition of "homeless." Plaintiffs argue the statute contains arbitrary classifications that do not meet strict scrutiny.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr, Inc.*, 473 U.S. 432, 439 (1985). The Supreme Court "has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). The Equal Protection Clause is violated when voting qualifications invidiously

discriminate. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665-66 (1966) (rejecting poll tax).

The statute, for reasons explained earlier, is a residency requirement, and strict scrutiny does not apply. The Supreme Court has explained that states have "considerable leeway" in enacting legislation, even if it appears to affect similarly-situation people differently. *Clements v. Fashing*, 457 U.S. 957, 962-63 (1982). "Under traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Id.* at 963. By requiring that voters live in the state, the statute makes a legitimate distinction between residents and non-residents. *See Martinez v. Bynum*, 461 U.S. 321, 329 n.7 (1983) ("[T]here is nothing invidiously discriminatory about a bona fide residence requirement if it is uniformly applied."). The reason Plaintiffs are not considered residents of Tennessee is not because they live in motors homes, but because they did not demonstrate they live in Tennessee.

Plaintiffs also contend Defendants have applied the statute differently to them by denying them the right to vote while allowing voting by homeless people, who also lack residential addresses. But homeless people are residents of the place they live, even if that place is a park bench, while Plaintiffs have not clearly pointed to any place they live. Defendant contends people without traditional fixed residences, whether they are homeless or live in motor homes, can submit a physical location where they live. This accords with the NVRA, as mentioned earlier.

### D. Right to Travel

Plaintiffs allege the statute violates the right to interstate travel. The Supreme Court has

recognized a "constitutional right to travel from one State to another." *Saenz v. Roe*, 526 U.S. 489, 498 (1999). In *Dunn*, 405 U.S. at 330, the Supreme Court found unconstitutional a Tennessee requirement that a person live in the state for 12 months before being able to register to vote. Such restrictions penalize people who have been residents of a state for a short period of time. *Id.* at 338. But the statute at issue here does not penalize Plaintiffs for being new residents of Tennessee. It prohibits them from voting because they are *not* residents of Tennessee. Requirements that someone be a resident of a state do not violate the right to interstate travel. *McCarthy v. Philadelphia Civil Service Comm'n*, 424 U.S. 645, 647 (1976); *see also Martinez v. Bynum*, 461 U.S. 321, 328 (1983) (noting that any person is free to move to a state and establish residency there).

The Privileges and Immunities Clause is a component of the right to travel. *Saenz*, 526 U.S. at 501. The clause states, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Art IV. § 2. This clause was intended to help fuse the states into a collection of one Nation by ensuring the citizen of a state who enters another state has the same privileges enjoyed by citizens of that state. *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). The clause "prevents a State from discriminating against citizens of other States in favor of its own." *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 511 (1939). "[O]ne of the privileges conferred by this Clause 'is that a citizen of the United States can, of his own volition, become a citizen of any State of the Union by a *bona fide* residence therein, with the same rights as other citizens of that State." *Saenz*, 526 U.S. at 503 (quoting *Slaughter-House Cases*, 83 U.S. 36, 80 (1872)) (emphasis in the original). Here, all people are prohibited from using a commercial address in the manner prohibited by the statute. The statute does prevent people who are not citizens of Tennessee from voting in Tennessee, but this distinction is a legitimate residency requirement for voting.

Furthermore, there is nothing preventing Plaintiffs from becoming citizens of Tennessee if they so choose. But the state legitimately requires more than just a commercial mailbox before Plaintiffs can say they live in Tennessee.

E. **Procedural Due Process**

Plaintiffs contend they were deprived of their voting rights without procedural due process, in violation of the Fourteenth Amendment. The procedural due process clause provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14 § 1. To succeed on a procedural due process claim, Plaintiffs must have been deprived without appropriate process of a liberty or property interest protected by the Fourteenth Amendment. *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002); *Franklin v. Aycock*, 795 F.2d 1253, 1261 (6th Cir. 1986). Appropriate process is generally notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). However, the exact requirements are flexible based on the particular situation. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Those requirements depend on (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335.

Denial of the right to vote implicates a liberty interest. *Miller v. Blackwell*, 348 F. Supp. 2d 916, 921 (S.D. Ohio 2004); *Doe v. Rowe*, 156 F. Supp. 2d 35, 47 (D. Me. 2001). Defendants argue Plaintiffs received proper notice and opportunity to be heard based on the letter Plaintiffs received

of their impending purge from the voting rolls.

Plaintiffs received notice that their voter registrations had been purged, and they had 30 days to contact the BEC with questions about the purge. This notice occurred before the denial of their voting rights, which occurred on election day, not the day their voter registrations were purged. *Lawson v. Shelby County*, 211 F.3d 331, 336 (6th Cir. 2000) ("The U.S. Constitution protects an individual's right to vote during an election, not the right to register to vote prior to an election."). Layton made an inquiry, and there are no facts about what resulted from that inquiry. The Teels wrote multiple letters back and forth between Defendants.

The Court concludes the process in this case was sufficient. Although Plaintiffs have an interest in voting, Tennessee has an interest in ensuring only residents vote. The process that occurred provided Plaintiffs with notice their registrations were being purged and an opportunity to challenge that by communication with Defendants. There was little risk of erroneous deprivation, since no elections were scheduled for months, and Plaintiffs could have avoided deprivation if they could have shown they lived in Bradley County. Furthermore, although Plaintiffs were already registered in Bradley County, their registration was improper, and there was no reason the BEC could not remove improperly registered voters. *See Bell*, 367 F.3d at 591-92 (noting the distinction between eligible and ineligible voters, and holding a state may remove ineligible voters under the NVRA).

### F. Tennessee Constitutional Claims

Because Plaintiffs' Tennessee claims are closely related to their federal claims, this Court could exercise supplemental jurisdiction under 28 U.S.C. § 1367. However, the Court may decline to exercise supplemental jurisdiction over the Tennessee claims if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). Defendants' brief supporting its motion to dismiss did not specifically address Plaintiffs' claims under the Tennessee Constitution. Given the lack of argument directly about those claims and the fact this Court is dismissing all claims over which it has original jurisdiction, the Court will **DECLINE** to exercise supplemental jurisdiction and will **DISMISS WITHOUT PREJUDICE** Plaintiffs' Tennessee law claims.

### IV. CONCLUSION

Despite the unquestionable importance of the right to vote, it is not an unconditional right. Tennessee may require voters to be residents of the state. Plaintiffs did not meet the residency requirements of Tennessee, and thus have not been allowed to vote in Tennessee. Since these residency requirements are constitutional, both facially and as applied, Plaintiffs fail to state a claim for relief. Accordingly, for the foregoing reasons, Defendants' motion to dismiss will be **GRANTED** (Court File No. 19).

An Order shall enter.

        **/s/**
        **CURTIS L. COLLIER**
        **CHIEF UNITED STATES DISTRICT JUDGE**